UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-21158-CIV-LENARD/GOODMAN

MONICA BARBA, et al.,

    Plaintiffs,

v.

SHIRE US, INC., et al.,

    Defendants.

_____/

**ORDER CONCERNING *IN CAMERA* REVIEW OF PRIVILEGED**

**DOCUMENTS AND REQUIRING SUPPLEMENTAL**

**BRIEFING ON THE CRIME-FRAUD EXCEPTION**

This Cause is before the Undersigned on the parties' discovery disputes raised in filings by Plaintiffs [ECF No. 182] and Defendant Shire US, Inc. ("Shire") [ECF No. 183]. The Court initially scheduled [ECF No. 180] a discovery hearing for April 8, 2015, but the parties subsequently notified the Court of a resolution to their discovery issues. Accordingly, the April 8, 2015 hearing was cancelled. [ECF No. 184]. As part of their resolution though, the parties agreed to an *in camera* review by the Undersigned of twenty documents concerning privilege issues, for which the Court established guidelines. [*Id.*]. On April 17, 2015, Plaintiffs submitted a memorandum of law concerning the privilege issues [ECF Nos. 187; 189], and Shire filed a response on April 24, 2015 [ECF Nos. 192; 194].

At the outset, the Undersigned notes that the attorney-client privilege "is a narrow exception to the fundamental principle that the public is entitled to every man's evidence. . . . Questions concerning the validity and scope of this narrow privilege must be resolved on a case-by-case basis." *In re Grand Jury Investigation No. 83-30557*, 575 F. Supp. 777, 778 (N.D. Ga. 1983) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1100 (5th Cir. 1970), *cert denied*, 401 U.S. 974 (1971); *Upjohn v. United States*, 449 U.S. 383, 396-97 (1981)) (internal citations omitted). Accordingly, having reviewed the documents provided by Shire [ECF Nos. 185-2; 185-3; 185-4],[1] Plaintiffs' memorandum and Shire's response, the Undersigned makes the following document-by-document determinations as to Shire's claims of privilege:[2]

1. **SHIREBAR2219307-308/Doc. ID 885729:** *Privilege sustained.* While Plaintiffs may be correct that statements from Shire's in-house counsel, Scott Applebaum, on the simple status of negotiations are not privileged, Shire has properly redacted Applebaum's *opinions and analysis* concerning negotiations, as those portions **are** privileged.

---

[1] In addition to filing the documents under seal on the CM/ECF system, Shire also provided a courtesy copy of the documents to Chambers per the Court's instructions [ECF No. 184].

[2] The Court applies the Bates numbers provided by the parties to identify each document. The Undersigned will address the documents in the order that the parties provided them, however, for seven of the documents, Plaintiffs have provided a single brief [ECF No. 189, pp. 3-10], objecting to the privilege designation on the basis of the crime-fraud exception. The Court will address those documents in a separate section below requiring supplemental briefing on several specific questions.

**2. Doc. ID 210461:** *Privilege overruled.* There is nothing in the document -- a handwritten note authored by a non-attorney, labeled in the privilege log as "Undated . . . Handwritten Notes" -- indicating privilege except for an attorney's email address jotted down. Shire cannot even say for sure the exact circumstances of the note, offering in their response that it was "used for *or* taken from a call with Shire's outside counsel." [ECF No. 192, p. 3 (emphasis supplied)]. This is insufficient to convince the Undersigned of privilege. Shire must produce the document by May 27, 2015.

**3. SHIREBAR2162266-267/Doc. ID 263224-225:** *Privilege overruled in part.* While the Court accepts Shire's position that scripts prepared by or with the advice of counsel may be attorney work product, *see Becker v. E.I. Du Pont de Nemours & Co.*, No. 87-cv-6866, 1988 U.S. Dist. LEXIS 4940 (E.D. Pa. May 25, 1988), close review of the document at issue here finds only one specific reference to the advice of counsel. Shire states broadly that the non-attorney negotiator who prepared this script for use in negotiations was advised by counsel, but nothing more is offered to substantiate this.

In *Becker*, which Shire cites to for the proposition that scripts prepared under the advice of an attorney may be privileged, the court closely scrutinized portions of the script at issue and determined that only select *portions* of it were closely related to the mental impressions of counsel -- i.e. attorney work product -- and were therefore privileged, however, the remainder of the script was deemed not privileged. *Id.*, at *5-6. Accordingly, upon review of this script for use in negotiations, the Undersigned finds

3

that the small selection (in the second to last standalone paragraph on the second page) that refers directly to the advice of counsel shall be deemed privileged and may be redacted, but the remainder of the document shall be turned over to Plaintiffs unredacted by May 27, 2015.

4. **SHIREBAR2219504-506/Doc. ID 947720:** *Privilege sustained.* Plaintiffs' argument mirrors the argument regarding number 1 above. Upon review, the Court concludes that the redacted communication involving in-house counsel reflects the opinions and analysis of counsel (as well as the question of a non-attorney seeking advice of counsel), not merely the status of negotiations.

5. **SHIREBAR2219271/Doc. ID 263197-199:** *Privilege sustained.* The redacted portion of this document is a page from a presentation by Shire's outside counsel outlining potential litigation outcomes, which is clearly protected by the privilege. The page also features handwritten notes by a non-attorney Shire employee that are directly derived from the privileged communication of counsel, and so should also be protected by privilege.

8.[3] **Doc. ID 262859-860:** *Privilege sustained.* Plaintiffs allege that the document itself is subject to their crime-fraud exception argument, which is addressed below, but also contend that, at minimum, the handwritten notes of a non-attorney

---

[3] The numbering here skips to number 8 from 5 because, as noted above, the claims of privilege as to certain documents are objected to by Plaintiffs in a single brief on the crime-fraud exception. This also occurs below when the numbering skips from 12 to 16.

Shire employee on the document are not subject to privilege because they do not reflect or contain legal advice. As Shire states, these notes are derived from the document itself -- a document that Plaintiffs concede is privileged, except for the crime-fraud exception -- and are reflective of questions and advice sought by the non-attorney. So, as far as the document itself is protected by privilege, so are the handwritten notes based upon it.

9. **Doc. ID 335254-255:** *Privilege sustained*. Plaintiffs incorporate the argument from number 8 above. The Undersigned's review of the document reveals that, aside from stray marks on the corners of the pages, it does not appear that there are handwritten notes of a non-attorney to be considered non-privileged communications (which Plaintiffs argued in number 8), so that argument is not under consideration here. The crime-fraud exception argument is addressed below.

10. **Doc. ID 263229:** *Privilege sustained*. Shire asserts privilege based on these handwritten notes being recorded by a non-attorney at a board meeting featuring specific legal advice from outside counsel, while Plaintiffs assert that the Court should not just blindly accept the representation that this reflects advice from counsel if it is not specifically noted as such. Upon review, it is readily apparent that these notes specifically document legal repercussions of potential company actions, and, as such, the Undersigned accepts these notes as reflecting legal advice of outside counsel, as Shire claims.

**11. Doc. ID 272611-614:** *Privilege sustained.* Shire asserts privilege over these handwritten notes by a non-attorney on the basis that they reflect the legal advice of in-house counsel presented at a meeting. Plaintiffs assert a similar argument as was presented for number 10 above. Upon review, it is readily apparent that the document notes in-house counsel's presence at this meeting and predominantly outlines litigation timelines and potential outcomes. In addition, the notes themselves say "priviledged (sic)/conf'd." As such, the Undersigned accepts these notes as reflecting the communication of legal advice to Shire.

**12. Doc. ID 263230-232:** *Privilege sustained*. Plaintiffs incorporate the same argument for this as they asserted for number 11 above. While the Undersigned notes that this document is not "handwritten notes," as Shire refers to it [ECF NO. 192, p. 5], it is readily apparent that this document is entirely focused on potential litigation outcomes and settlement strategies, while featuring in-house counsel's name at the very beginning. Therefore, the Undersigned accepts the assertion that this document reflects the communication of legal advice from Shire's in-house counsel.

**16. SHIREBAR2488430-432/CIT20568-570:** *Privilege overruled in large part*.

In this string of emails, Shire asserts that a non-attorney employee solicits and receives legal advice from the Shire legal team. However, review of the document reveals no such advice was solicited, nor was any given. In fact, no attorneys are even carbon copied in the email chain for four out of the six emails. And in the emails in

which counsel are copied, no communication is directed at them with regard to legal advice or concerns. Accordingly, Shire's assertion of privilege over large swaths of this email chain should be overruled. However, the Court will permit Shire to keep the third full paragraph on the second page of this document (beginning with "3) Proposed . . . ") redacted, as it specifically invokes legal advice that had been communicated to Shire employees from counsel. The remainder of the document however shall be unredacted and produced to Plaintiffs by May 27, 2015.

**17. SHIREBAR2488433-436/CIT021305:** *Privilege overruled in part.* Similar to the string of emails in number 16 above, the Undersigned finds that much of what Shire has redacted as privileged is not protected. First, the initial three emails in the sting do not allude specifically to any legal advice, nor are any attorneys copied in the communications. Accordingly, the list in the very first email (found on page labeled "CIT021308") should be unredacted and produced. Large swaths of text throughout the remainder of the email chain have been inappropriately redacted as well. While there are counsel who are carbon copied on much of the communications, only one email is drafted by an attorney -- and considering the contents of it, including specific allusions to advice from outside counsel -- and only one other email contains specific references to the advice of outside counsel. These specific portions -- the first full paragraph on the page labeled "CIT021307" (beginning with "3) Proposed . . . ") and the contents of the email drafted by in-house counsel James Harrington that runs from the bottom of the

page labeled "CIT021305" to the top of the page labeled "CIT021306" -- may remain redacted, while the rest of the email chain shall be produced to Plaintiffs in unredacted form by May 27, 2015.

The parties briefing refers to a document attached to the email chain that was initially not presented to the Court for review. The Undersigned issued an Order [ECF No. 195] requiring the parties to either submit that attached document or to notify the Court that there was no such document. The Court received the document from Shire's counsel on May 12, 2015, which is labeled "CIT021317-324."

Plaintiffs argue that the attached "Citizens Petition" document is not privileged under the "draft document" rule, which they say was applied in a similar case, *FTC v. Reckitt Benckiser Pharms., Inc.*, No. 3:14mc5, Dkt. Nos. 42-43 (E.D. Va. Mar. 10, 2015). The Undersigned's review of that case however does not find support for Plaintiffs' position. In that case, a court in the Eastern District of Virginia stated the Fourth Circuit's view that "the attorney-client privilege with respect to confidential communications does not apply to published documents and the underlying details and data if, at the time the communication was made, the client intended that the document was to be made public." *Id.* at p. 15.

While Plaintiffs may be entitled to the draft of a document that was ready to publish, it is clear from the email exchange that this document is attached to a document which was still under consideration and in the drafting process. The specific

email that the document is attached to is from a non-attorney and addressed directly to two attorneys (one in-house counsel and one outside counsel) while copying two more (in-house counsel). Further, the communication in that email calls the attached document the "latest version" and notes that the parties involved in the email will talk about the contents of the document at a later date. From the Undersigned's perspective, this is a clear indication that the document is *not* ready to publish and therefore is not subject to the "draft document rule," as Plaintiffs argue (*if* the Undersigned agreed that the rule was even applicable in this Circuit). Accordingly, CIT021317-324 should remain protected by privilege.

**18. CIT10832/CIT10841-846:** *Privilege sustained.* Plaintiffs ask the Court to evaluate whether the section of the email addressed to "Jim H" -- in-house counsel, James Harrington -- is seeking out his advice in a legal capacity or in his corporate capacity. Review of the redacted text indicates that the advice sought is legal in nature, so that section of the email should remain redacted.

Not mentioned in the parties' briefing is a document attached to the email, which is wholly redacted. Because Plaintiffs have not contested the status of this document, it too shall remain privileged.

**19. SHIREBAR2219696-698/CIT011217-223:** *Privilege overruled in part.* This email chain features a redacted email that is identical to one from numbers 16 and 17 above. As was found there, certain text must be unredacted. On the page labeled

9

"CIT011218," Shire must unredact and produce by May 27, 2015, three paragraphs under the heading "1) Scientific Rationale and 2) Interdependencies with Concerta," as these paragraphs neither seek nor express any legal advice of counsel. The remaining paragraphs in that email shall remain redacted.

On the page labeled "CIT011217," Shire has redacted one paragraph that it claims reflects legal advice. Review of this paragraph reveals that it does appear to reflect legal advice, as it recounts the outcome of a meeting with the legal team concerning the current status of the preparation of the "Citizen's Petition" and a plan forward. The Undersigned determines that this sufficiently reflects legal advice and should remain protected by privilege.

The email attachments (CIT011220-223) are properly redacted as protected by privilege. The attachments are timelines of the preparation of the Citizen's Petitions and extensively reflect the timing of legal work and legal consultations. Accordingly, this should remain protected by privilege.

**20. CIT022651/CIT022652-658:**   *Privilege sustained*.   Plaintiffs assert the same argument as in number 17 with regard to the email attachment, claiming that the "draft document rule" eliminates any protection from privilege. Just as the Undersigned noted above, even if that rule were applicable in this Circuit, this document is still protected by privilege because it is clear from the text of the email seeking review and comments

that it is still in the *drafting* phase and not yet ready for publication. Accordingly, Shire's assertions of privilege are sustained.

**Crime-Fraud Exception: Request for Supplemental Briefing**

Upon *in camera* inspection of the documents with the following Bates numbers, the Undersigned sustains Shire's claim of attorney-client privilege: Doc. ID 262448-462; Doc. ID 0029768-69; Doc. ID 262859-860; Doc. ID 335254-255; Doc. ID 319749-768; Doc. ID 262411-425; Doc. ID 262847-848.

Plaintiffs, however, assert that despite the existence of attorney-client privilege, the documents are subject to the "crime-fraud exception" to the privilege, arguing: (1) that Shire engaged in a "reverse payment scheme;" (2) that this 'scheme' violated antitrust law, constituting a fraud; and (3) that this 'scheme' was furthered with the advice of counsel. Accordingly, Plaintiffs argue that the advice counsel provided concerning the alleged reverse payment scheme -- including documentation of advice concerning litigation, negotiation and, ultimately, settlement with two generic drug producers -- constitutes an exception to privilege and thus requires Shire and its counsel to relinquish all documents under that category.

The core of Plaintiffs' argument for the application of the crime-fraud exception mirrors their substantive claims in this lawsuit; specifically, that Shire engaged in anti-competitive behavior to maintain its monopoly over prices of certain prescription drugs. Thus, the ultimate determination as to whether the crime-fraud exception should

apply seemingly requires the resolution of the very same factual and legal issues that have not yet been decided by a jury and/or the presiding District Court judge.

In essence, Plaintiffs' argument for the application of the crime-fraud exception is a veiled, preliminary summary judgment motion. Plaintiffs have boiled down a core portion of their substantive claims to just under seven pages of briefing.[4] And while Plaintiffs have presented the Court with significant documentation of the alleged "scheme" and citations to several cases outlining the parameters of the crime-fraud exception,[5] a core issue is not addressed in the supplied briefing.

It is a highly-technical, legal and factual determination as to whether Shire committed fraud/engaged in anti-competitive behavior through the use of a reverse payments scheme. To determine if there is a reasonable basis to suspect the privilege holder committed fraud, this Court would be making a judgment on the very same

---

[4]     Plaintiffs have attached *more than 800 pages* of exhibits to their briefing on the crime-fraud exception. Plaintiffs have taken **_significant_** liberties with the Undersigned's Order [ECF No. 184] allowing them to submit a memorandum of law on the privilege issues that was to "be no longer than ten double-spaced pages, excluding signature block and certificate of service." The Undersigned will not strike the exhibits, however, Plaintiffs should note that the Court's agreement to review **_20_** documents *in camera* for privilege issues was *not* an invitation to submit 30 additional documents of varying length -- from 2 to 101 pages each -- for the Court to make such a judgment. Further, the Court's request for supplemental briefing described below is similarly not such an invitation.

[5]     While Plaintiffs have presented ample case law indicating that the crime-fraud exception is an argument that a court *can* consider, the precedent that Plaintiffs have presented is underwhelming as to whether the Court *should* consider and actually apply the exception in this specific context, since it is very much a case-by-case determination.

case-dispositive subject matter that the District Court and/or a jury will be addressing in the final disposition of the case itself. Accordingly, the Undersigned **ORDERS** that the parties shall, by May 27, 2015, supply supplemental briefing of no more than ten double-spaced pages, excluding signature block and certificate of service, addressing the following questions:

1. Does Plaintiffs' argument that the crime-fraud exception applies in this case require the very same factual and legal determinations as Plaintiffs' core claims in the complaint? For instance, to apply the crime-fraud exception, would the Undersigned necessarily need to resolve the legal question as to whether reverse payment schemes were illegal under Eleventh Circuit case law at the time Shire entered into settlements with Barr and Impax/Teva? If the Undersigned determined that reverse payment schemes were, in fact, illegal in the Eleventh Circuit at that time, then would the Undersigned also need to make the specific factual finding that Shire's actions constituted violations of the Sherman Act, thus, in essence, finding Plaintiffs have met their burden for judgment in the case as a whole on all or some of their claims?

2. What specific standard of proof must Plaintiffs meet to establish that a crime and/or fraud occurred in this case to implicate the exception to privilege?

3. What effect would this Court's determination that the crime-fraud exception applies -- thus, finding that Shire, as privilege-holder, engaged in fraudulent, anti-competitive behavior -- have on the District Court's disposition of the case

generally? Would such a determination by a magistrate judge infringe on the authority of the District Court to make that finding itself? For instance, what impact would a finding by this Court on the legal issue of whether reverse payment schemes were illegal under Eleventh Circuit case law at the time Shire entered into settlements have on a potential ruling at the summary judgment stage by the District Court judge as to that same issue?

4. Is there case law where a court has applied the crime-fraud exception when its application required the court to make case-determinative rulings on the merits of the claims in that very case? Are there cases where a court has declined to apply the exception for that reason or on similar grounds?

**Conclusion**

Pursuant to the Court's *in camera* review, Shire shall produce to Plaintiffs the specific unredacted documents ordered above by May 27, 2015. By that same date, at 5:00 PM, both parties shall submit the supplemental briefing ordered above. The Court declines to impose attorneys' fees on any party concerning this review because both sides prevailed on some issues.

**DONE AND ORDERED** in Chambers, in Miami, Florida, May 20, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
Honorable Joan A. Lenard
All Counsel of Record