## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 13-21158-CIV-LENARD/GOODMAN

MONICA BARBA, et al.,

      Plaintiffs,

v.

SHIRE US, INC., et al.,

      Defendants.

_____/

### ORDER CONCERNING CRIME-FRAUD EXCEPTION

In accordance with the parties' agreement to cancel a discovery hearing, the Undersigned agreed to undertake an *in camera* review of twenty documents concerning privilege issues. [ECF No. 184]. The Undersigned ordered Defendants to submit under seal the documents at issue, and I also directed the parties to submit memoranda. [*Id.*]. The Undersigned issued an Order [ECF No. 201] ruling on the privilege question concerning all twenty documents, but I reserved ruling on the application of the crime-fraud exception to seven of the documents: Doc. ID 262448-462; Doc. ID 0029768-69; Doc. ID 262859-860; Doc. ID 335254-255; Doc. ID 319749-768; Doc. ID 262411-425; Doc. ID 262847-848.[1]

Concerning the crime-fraud exception, Plaintiffs attached *more than 800 pages* of exhibits in support of their memorandum. As noted in the previous Order [ECF No.

---

[1] The Undersigned ruled that all seven documents were subject to attorney-client privilege. [ECF No. 201, p. 11].

201, p. 12 n. 4] Plaintiffs took significant liberties with the Undersigned's Order [ECF No. 184] allowing them to submit a memorandum of law on the privilege issues that was to "be no longer than ten double-spaced pages, excluding signature block and certificate of service." The Undersigned did not and will not strike the exhibits, however.

Because of the excessive number of exhibits, the significant overlapping of factual and legal issues concerning the ultimate substantive determinations on which the case itself turns and the underwhelming presentation of case law on the subject, the Undersigned required [ECF No. 201] additional briefing from both parties. Having reviewed the original briefing, the supplemental briefing and the documents at issue themselves, the Undersigned **sustains** Defendant Shire US, Inc.'s ("Shire") claim of attorney-client privilege and **denies with prejudice** Plaintiffs' request to apply the crime-fraud exception (and to require Shire to turn over the documents).

### Legal Standard for Crime-Fraud Exception

"The attorney-client privilege does not protect communications made in furtherance of a crime or fraud." *U.S. v. Cleckler*, 265 F. App'x 850, 853 (11th Cir. 2008) (internal quotation marks omitted). This Circuit applies a two-pronged test for the crime-fraud exception:

> First, there must be a *prima facie* showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of

2

counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

*Id.* at 853 (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1416 (11th Cir. 1994)).

The attorney need not be aware he is assisting in a fraud for the exception to apply. *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1227 (11th Cir. 1987); *Gutter v. E.I. DuPont De Nemours*, 124 F. Supp. 2d 1291, 1300-01 (S.D. Fla. 2000). "[T]he party opposing the privilege on the crime/fraud exception has the initial burden of producing evidence which, **if unexplained**, would be *prima facie* proof of the existence of the exception. The burden of persuasion *then shifts to the party asserting the privilege* to give a **reasonable explanation** of its conduct." *Gutter*, 124 F. Supp. 2d at 1307 (emphasis added).

The *prima facie* standard "is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Schroeder*, 842 F.2d at 1226. "Such a showing must have a foundation in fact, and cannot rest upon mere allegation." *Gutter*, 124 F. Supp. 2d at 1299 (citing *Schroeder*, 842 F.2d at 1226).[2]

---

[2]     The federal courts have not definitively determined the *amount* of proof needed to establish the crime/fraud exception. *See Gutter*, 124 F. Supp. 2d at 1306. The Eleventh Circuit standard for the meaning of "*prima facie*" is established in the grand jury context, and there has been some argument that a stricter preponderance standard should apply outside of the grand jury context. *See id.* But the Eleventh Circuit has made no definitive determination that a stricter standard is required, and thus this Court must continue to abide by the *Schroeder* rule. *See id.* United States District Judge Alan Gold discussed this

3

**Analysis**

Upon *in camera* inspection of the documents at issue, the Undersigned sustained Shire's claim of attorney-client privilege. Plaintiffs, however, contend that despite the existence of attorney-client privilege, the documents are subject to the "crime-fraud exception," arguing that: (1) Shire engaged in a "reverse payment scheme;" (2) this 'scheme' violated antitrust law, constituting a fraud; and (3)  this 'scheme' was furthered with the advice of counsel. Accordingly, Plaintiffs argue that the advice counsel provided concerning the alleged reverse payment scheme -- including documentation of advice concerning litigation, negotiation and, ultimately, settlement with two generic drug producers -- generates the crime-fraud exception to privilege and thus requires Shire and its counsel to produce the (supposedly) no-longer-privileged documents.

As the Undersigned noted in the Order requiring additional briefing [ECF No. 201], the core of Plaintiffs' argument for the crime-fraud exception mirrors their substantive claims in this lawsuit; specifically, that Shire engaged in anti-competitive behavior to maintain its monopoly over prices of certain prescription drugs. Thus, the ultimate determination as to whether the crime-fraud exception should apply seemingly requires the resolution of some of the very same factual and *legal* issues that have not yet been decided by a jury and/or the presiding District Court judge.

---

issue in *Gutter* and ultimately upheld the opinion of a Special Master appointed to decide crime-fraud issues. *Id.* at 1304-10.

While it is true that there is a different standard of proof required for the application of the crime-fraud exception than the standard used to establish liability under the Sherman Act (i.e., Plaintiffs need now to present only *prima facie* evidence of the crime or fraud in this circumstance, at which point the burden shifts to Shire to rebut the showing by a preponderance of the evidence), the parties' efforts to persuade the Court to adopt their view of the crime-fraud exception here have essentially caused this discovery dispute to morph into what amounts to a "trial on the papers." *See In re Method for Processing Ethanol Byproducts and Related Subsystems Patent Litigation (Iroquois)*, No. 1:10-ml-2181, 2015 WL 2345635, at *2 (S.D. Ind. May 15, 2015). As noted above, Plaintiffs attached more than 800 pages of exhibits to their ten-page memorandum and are asking the Court, in essence, to determine the viability of part of their substantive antitrust claim.

In *Iroquois*, the district court was reluctant to engage in such a "trial on the papers" in a case where "the very same conduct, evidence, and inferences on which [the movant] relies to make its case for the crime-fraud exception are the foundation of the [movant's substantive] defense[;]" thus, the motion to compel "attempt[ed] to demonstrate in discovery briefing the very abuse that must be 'shown to the satisfaction of the judge' at the . . . trial." *Id.* (quoting *Clark v. United States*, 289 U.S. 1, 16 (1933)). The district court noted that the "persuasive value or strength (or lack thereof) of certain evidence identified by [the movant] as indicative of fraud, including the intent

element, may depend in large part on a fact-finder's evaluation of the credibility of witnesses." Rather than engage in a lengthy trial on the crime-fraud subject as a preface to the actual trial on the merits in the case, the district court instead balanced the movant's desire to obtain in advance of trial evidence it believed would be relevant to its case, and protecting against the risk of compromising legitimate privileged attorney-client communications. *Id.* at *3.

The district court's ultimate solution was to deny the motion *without prejudice* until the "factual predicate for the crime-fraud exception [could] be determined in an adversarial proceeding—most likely during the . . . trial itself given the near identity of the issues." *Id.* at *4.

The Undersigned is persuaded by the *Iroquois* ruling -- to a point. However, the present situation differs in important respects from *Iroquois*, which leads the Undersigned to deny the motion **with prejudice**.

First, the district court here must still make case-determinative **legal** rulings -- not just **factual** determinations -- that also apply to the application of the crime-fraud exception: *even if* the Court were to accept all of Plaintiffs factual allegations as true, it is uncertain that the complained-of conduct *was even potentially illegal* at the time it occurred.

Shire notes that the alleged "reverse payments" scheme -- which it denies committing as a factual matter -- would not have even violated the antitrust laws in the

Eleventh Circuit at the time these alleged activities took place. This *legal* argument has not yet been determined by the District Court in this case. The issue of alleged "reverse payments" is prominent in the parties' briefing on Shire's renewed summary judgment motion. [ECF No. 247]. In particular, Plaintiffs' opposition to the motion contains substantial argument and analysis on that point. [ECF No. 290]. Such an intricate and case-determinative matter requires a thorough adversarial process beyond the discovery context to be adequately adjudicated, as the *Iroquois* court noted.

This is reason enough for the Court to at least wait until certain issues have been fully aired out in summary judgment and potentially at trial (for the factual issues) before deciding whether the attorney-client privilege should be deemed waived. However, there is another significant difference between the present situation and *Iroquois*: in this case, the Undersigned possesses the documents at issue and thus can actually review them *in camera* to determine if there is evidence of crime or fraud in the advice being sought and given.

In the supplemental briefing, *Plaintiffs* pointed to *In re Richard Roe, Inc.* as an example of an overlap between the alleged crime-fraud and the substantive antitrust claim in a case also involving allegations of "sham litigation." 168 F.3d 69 (2d Cir. 1999). In *Richard Roe*, the Second Circuit noted that "[w]here the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or

no legal or factual basis and was carried on substantially for the purposes of furthering the crime or fraud." *Id.* at 71. Where a party "may violate antitrust laws by bringing baseless litigation intended to delay entry into a market by a competitor[,] . . . some communications or work product generated in the course of such litigation might, **after a rigorous *in camera* review** by a court for relevance, fall within the crime-fraud exception." *Id.* at 72 (emphasis supplied).

The Second Circuit did in fact review the documents at issue in *Richard Roe*. The review ultimately determined that "[n]o document suggests a belief that the defense of the litigation had no legal or factual support or that the act of litigating was for an improper purpose." *Id.*

Because Shire submitted the documents at issue to the Court, the Undersigned can assess substantively whether there was a nefarious purpose by reviewing the actual text. The Undersigned's *in camera* review finds no evidence of illegal or fraudulent intent by either the attorney or the client. The advice being sought and given provides no support to Plaintiffs' claim that the act of litigating here was for an improper purpose. In the words of the Second Circuit in *Richard Roe*, the "documents do reflect varying degrees of optimism or pessimism over particular issues and the ultimate outcome of the case[s]. . . . [However, n]one [of the communications] suggest[] a hopelessness as to the merits" of the agreements or the legal theories underlying the litigation strategies. *Id.*

8

Accordingly, it would be inappropriate for the Undersigned to order that these documents be turned over to Plaintiffs, as it is clear that Shire and its counsel were engaging in attorney-client communication concerning litigation strategy, not an intentional scheme to violate the antitrust laws through litigation. While Plaintiffs have a *theory* that the litigation strategy at issue may *potentially* violate the Sherman Act and therefore be considered a crime or fraud, the Undersigned's review does not find evidence of such an *intent* in the documents.

## Conclusion

The Undersigned **denies with prejudice** Plaintiffs' request to apply the crime-fraud exception to the seven documents -- Doc. ID 262448-462; Doc. ID 0029768-69; Doc. ID 262859-860; Doc. ID 335254-255; Doc. ID 319749-768; Doc. ID 262411-425; Doc. ID 262847-848.

**DONE AND ORDERED** in Chambers, in Miami, Florida, November 12, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Honorable Joan A. Lenard
All Counsel of Record

9